IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICHARD L. ABBOTT                                )
                                                 )
         Plaintiff,                              )
                                                 )
         v.                                      )       C.A. No.
                                                 )
LUKE W. METTE, KATHLEEN M.                       )
VAVALA, COLLINS J. SEITZ, JR.,                   )
JAMES T. VAUGHN, JR., TAMIKA R.                  )
MONTGOMERY-REEVES, GARY F.                       )
TRAYNOR, and KAREN L. VALIHURA,                  )
                                                 )
         Defendants.                             )

## COMPLAINT

Plaintiff Richard L. Abbott ("Abbott") bring this action for Injunctive and Declaratory

Relief and related claims pursuant to the Federal Racketeering Influenced And Corrupt

Organizations Act ("Federal RICO"), the Federal Civil Rights Statute (42 U.S.C. § 1983), the

Delaware Organized Crime And Racketeering Act ("State RICO"), and the Federal Declaratory

Judgment Act, based upon the following:

## THE PARTIES

1.      Abbott is a Delaware resident, a citizen of the United States, and a member of the

Bar of the Supreme Court of the State of Delaware in good standing since December 14, 1989.

2.      Defendant Luke W. Mette ("Mette") is a Delaware resident who is employed as the

Chief Disciplinary Counsel in the Office of Disciplinary Counsel ("ODC"), which is an agency of

the Delaware Judicial Branch.

3.      Defendant Kathleen M. Vavala ("Vavala") is a Delaware resident who is employed

as a Disciplinary Counsel by the ODC.

4.      Defendant Collins J. Seitz, Jr. ("Seitz") is a Delaware resident and Chief Justice of

the Delaware Supreme Court ("Supreme Court").

5.      Defendant James T. Vaughn, Jr. ("Vaughn") is a Delaware resident and a Justice of the Supreme Court.

6.      Defendant Tamika R. Montgomery-Reeves ("Montgomery-Reeves") is a Delaware resident and a Justice of the Supreme Court.

7.      Defendant Gary F. Traynor ("Traynor") is a Delaware resident and a Justice of the Supreme Court.

8.      Defendant Karen L. Valihura ("Valihura" and collectively referred to with Seitz, Vaughn, Montgomery-Reeves, and Valihura as the "5 Members") is a Delaware resident and a Justice of the Supreme Court.

## JURISDICTION & VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 18 U.S.C. § 1964, and 42 U.S.C. § 1988 since this case arises under laws of the United States and jurisdiction is expressly provided for claims under 42 U.S.C. § 1983 and 18 U.S.C. § 1962. This Court has supplemental jurisdiction over the State law claims asserted in this action pursuant to 28 U.S.C. § 1367(a).

10.     Personal jurisdiction in this judicial district over the Defendants is proper since they all reside in the State of Delaware or have contacts with the State of Delaware, including offices in Delaware.

11.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 since Abbott, Mette, Vavala, and the 5 Members are all legally situated in the District of Delaware.

## THE FACTS

A.      The Delaware Lawyer Discipline System; Secretive & Cloistered

12.     Through certain Rules adopted by the Supreme Court, they have established the

Delaware Lawyer Discipline System ("System").  By Order dated March 9, 2000, the Supreme

Court adopted the Delaware Lawyers' Rules of Disciplinary Procedure ("DLRDP"), which govern

the processes and procedures for the System.

13.     Supreme Court Rules and the DLRDP establish the ODC, a Board on Professional

Responsibility ("Board"), and a Preliminary Review Committee ("PRC").  The Board, the PRC,

and the ODC are all supposedly separate and independent entities, whose membership is each

appointed by the Supreme Court.  ODC Disciplinary Counsel serve at the pleasure of the Supreme

Court, and in practice they are not independent and merely carry out the bidding of the Supreme

Court.

14.     Under the System, the ODC is the entity that is supposed to screen and evaluate

potential disciplinary matters coming to their attention, investigates (if appropriate) to determine

if charges should be brought, and then either dismisses a matter or submits it to the PRC for

possible return of charges.

15.     The PRC sits in 3 member panels to determine if charges recommended by the ODC

will be brought before the Board.  Lawyers subject to a PRC proceeding are supposed be provided

an opportunity to submit written information on the charges sought by the ODC via DLRDP Rule,

but the ODC has denied that right to Abbott.  The ODC has refused to explain the predicate acts it

has alleged against Abbott regarding the 4 Charges or the 5 Charges (defined hereinafter).

16.     The Board is the body that conducts disciplinary hearings, which are conducted by

3 Board member panels.  But the Board panels only make recommendations, not any final

decisions.  The Supreme Court makes final decisions, which have in the past included decisions at

variance with Board recommendations and which have no basis in law and/or fact (*i.e.* arbitrary

decisions).  The Supreme Court will rule by *fiat*; it knows that it has the final say so it can get away

with ruling based on its unbridled whim.

17.     Pursuant to Supreme Court Rule 61, the 1985 Delaware Lawyers' Rules of Professional Conduct (the "1985 Rules") established pursuant to Supreme Court Order dated September 12, 1985 "shall govern the conduct of members of the Bar of this State."[1] But the 1985 Rules are not available for lawyers to review in order to determine if their conduct comports with the legal requirements.  Abbott recently was unable to even find the 1985 Rules in the Official Kent County Law Library at the Courthouse in Dover.

B.     The 5 Year Charade Conducted By Corrupt Actors

18.     For nearly 5 years now, the ODC has been harassing and attacking Abbott in bad faith based upon false allegations made by Vice Chancellor Sam Glasscock, III (the "Vice Chancellor"), who filed a Complaint with the ODC in May 2015 requesting a "fishing expedition" investigation of Abbott an exaggerated script casting aspersions at Abbott at a hastily called last minute gathering he arranged to trump up defamatory and disparaging remarks about Abbott (the "Hyperbolic Attack").  No facts or law supported the Vice Chancellor's personally motivated attack on Abbott pursuant to the Hyperbolic Attack; it was based on the Vice Chancellor's personal, subjective, and stylistic differences with Abbott's litigation approach.

19.     The Hyperbolic Attack was specifically planned in advance with conscious intent to concoct a transcript and record in order to forward it to the ODC based upon the Vice Chancellor's purposeful desire to harm Abbott without any valid factual or legal basis.

20.     The foundation for the Hyperbolic Attack was Abbott's perfectly legal and permissible: (1) advice to his client on how to potentially avoid a Court Judgment (not in disobedience to any Order provisions); and (2) Abbott's preparation of 2 Deeds transferring title

---

[1] Rule 61 is published on the Supreme Court website, on Westlaw, and in the Michie hardbound Rule book (Volume 2).

to 2 houses owned by his client to his client's wife (which was also not forbidden by any outstanding Court Order).

21.     Seitz's actions in or about 2000 showed Abbott how to validly avoid a Court Order to benefit a client. He advised his client, New Castle County, on how to avoid an Order of Judge Sue L. Robinson of this Court via the passage of retroactive legislation to moot the Order. In addition, Delaware lawyers legally and permissibly advise clients on legal means to avoid Court Orders regarding debts and other obligations all the time.

22.     So the Defendants have full knowledge that the "disobedience of court order" charge being pursued against Abbott is ill-founded. They soldier on, however, regardless of the facts and law. But the charges that Abbott lied and broke the law when he told the truth and acted within the bounds of the law are knowingly false.

23.     In addition to the predicate acts upon which the Hyperbolic Attack was based being perfectly allowable under the law, they are not proscribed by any express requirement contained in the 1985 Rules (as far as Abbott knows, as the 1985 Rules are nowhere to be found).

24.     In 2016, the ODC advised Abbott that they intended to pursue 3 charges against him, scheduling a presentation before the PRC (the "3 Charges"). *See* letter attached as Exhibit A.[2] The ODC later advised Abbott that the 3 Charges would be presented to the PRC at a later meeting. *See* Exhibit B. Both letters fraudulently represented that Abbott committed ethical violations based on his legal conduct and were in furtherance of a scheme to defraud and harm Abbott, the PRC, and the System (the "Scheme").

25.     The 3 Charges were all based upon the exact same predicate acts, which as set forth hereinbefore are perfectly legal and permissible actions that Abbott took on behalf of his client.

---

[2] All attachments hereto are herein incorporated by reference.

*See* Exhibits C and D. Therefore, it was legally impossible for the 3 Charges to constitute valid, good faith allegations of ethical violations. But the ODC's desire to ingratiate itself to the Vice Chancellor, its long standing practice of targeting solo practice lawyers like Abbott, and the Scheme caused the ODC to continue proceeding with the 3 Charges despite their frivolous nature (the "Star Chamber Proceeding").

26.     Over the ensuing 3½ year period, the ODC proceeded with the Star Chamber Proceeding, continuing to hang its bogus investigation over Abbott's head and periodically communicate with him to ensure that he was aware that they were still attacking him (without cause).

27.     The letters from the ODC to Abbott in July and September of 2016 contained false representations regarding the 3 Charges, purporting to be ready to present them to the PRC despite their obvious legal infirmity. And in fact the ODC never proceeded to the PRC, cinching their falsity.

28.     The ODC falsely contended that violations had been committed by Abbott with the express intent to cause Abbott harm and to advance the Scheme, to-wit: continuing their long-standing practice of attacking sole practitioner lawyers like Abbott in order to "make quota" and provide "cover" for their fawning treatment of lawyers who come from government or big law firms. The ODC refuses to evaluate and prosecute lawyers that work for government or big law firms in Delaware who commit well documented, clear-cut ethical violations.

29.     On December 16, 2019, Mette forwarded a letter to Abbott containing the latest set of ODC misrepresentations, this time alleging new charges against Abbott, which included 4 in total (the "4 Charges"). *See* Exhibit E. Once again, the ODC was pursuing allegations against Abbott that had no basis in fact or law, with the express intent that their misrepresentations in that

regard would cause harm to Abbott and advance their Scheme (to target him and score more points on their sole practitioner attack list).

30.    On January 14, 2020, Mette sent a letter to Abbott indicating that he now intended to pursue 5 charges against Abbott before the PRC (the "5 Charges"). *See* Exhibit F. Not satisfied with the bogus and ill-motivated 4 Charges, Mette decided to "pile on" one more allegation against Abbott to advance the Scheme to defraud the PRC, harm Abbott, and advance the practice of targeting sole practitioners for *supra*-legal enforcement. Not satisfied with the false and fraudulent charges against Abbott from 4 weeks prior, Mette now tacked on specious charges of Fraud/Deceit to a Court against Abbott, which is clearly intended as a "kill shot" (*i.e.* seeking a suspension or revocation of Abbott's law license).

31.    The letters regarding the 3 Charges, the 4 Charges, and the 5 Charges were all in furtherance of the fraudulent Scheme and Star Chamber Proceeding concocted by Mette and his predecessor and Vavala. The Scheme and Star Chamber Proceeding have the express approval and/or acquiesence and implicit *imprimatur* of the 5 Members.

C.    The Corrupt System, Scheme & Star Chamber Proceeding; All Defendants Are Co-Conspirators

32.    The charge alleged against Abbott regarding communications with the ODC or Board, alleging offense to a tribunal, is invalid on its face. All such communications are expressly designated as **CONFIDENTIAL** and therefore cannot be relied upon as a basis for charges against Abbott. More importantly, however, the ODC is not a "tribunal" as required by the ethics rule and DLRDP Rule 10 cloaks Abbott with Absolute Immunity regarding such communications. So obviously the Defendants proceed with that charge with the utmost bad faith; more obvious prosecutorial misconduct.

33.    One cannot prejudice the administration of justice or defraud a Court pursuant to

truthful representations and actions that are legally permissible. But the Defendants are chasing and attacking Abbott via their Scheme and the Star Chamber Proceeding nonetheless. Their half-decade attack campaign against Abbott pursuant to the Scheme and the Star Chamber Proceeding are the epitome of out-and-out illegal harassment engaged in with the utmost bad faith.

34.     The 5 Members have been made aware of the actions by Mette, his predecessor, and Vavala. They have declined to take any action or intervene in order to stop the Scheme and Star Chamber Proceeding from continuing forward, other than terminating Mette's predecessor from employment in or about November of 2018.[3] Indeed, the 5 Members even failed to intervene despite being advised of the ongoing, illegal, Unconstitutional practice of the ODC to target sole practitioners and let big firm and big government lawyers off the hook for their obvious ethical misdeeds.

35.     The System employs a double standard, which Abbott has observed over the past 10 years from his experiences in being victimized by attacks of the evil enterprise known as the ODC and the ODC's outright refusal to pursue charges against big law firm and government attorneys despite Abbott virtually presenting the entire conviction case to the ODC. Anecdotal and Bar publication information from over the last 20 years further cements the System's corrupt practices. Certain classes of lawyers receive kid glove treatment and virtual immunity from the 1985 Rules: big law firm and government attorneys.[4] Meanwhile, sole practitioners are targeted for persecution and are held to *supra*-legal standards intended to target them to show ODC job-justifying accomplishments.

---

[3] Indeed, the former Chief Disciplinary Counsel's ouster is shrouded in secrecy. She completely disappeared.

[4] This should come as no surprise since virtually every Judge appointed to State Courts in Delaware over the past 20+ years came from government or big law, including members of the Supreme Court. And the bias in favor of big firm and government attorneys has been further entrenched via appointment of lawyers to the ODC, Board, and PRC who also come almost completely from big law and government (and no solo practice lawyers).

36.     In March, 2018, the ODC filed a Petition For Interim Suspension ("Petition") against Abbott which had no valid basis in fact or law. The Supreme Court stayed the matter. Abbott sought relief from Stay to file a response, but the Supreme Court ignored it completely. But when the ODC filed a face-saving request to "withdraw" the Petition, the Supreme Court sided with the ODC despite Abbott's filing that correctly noted Rule 41 required dismissal. The Supreme Court and the ODC are alter egos. They work hand-in-hand to carry out a corrupt System, the Scheme and the Star Chamber Proceeding.

37.     The mailing of the bogus Petition, which contained false representations that Abbott had filed frivolous litigation, was in and of itself yet another in a long line of artifices to implement the fraudulent scheme concocted by the ODC nearly 5 years ago, which has been carried out consistently since then in a lengthy conspiratorial process. The Petition was filed March 2018. It contained numerous false representations which were expressly intended to cause Abbott harm and further the Scheme to defraud the System and Abbott in order to carry out a vendetta against him.

38.     The Petition was dismissed by Mette in 2019 soon after he was appointed. He realized its harassing nature, bad faith motive, and specious foundation. But Mette has forged ahead with the Scheme, the Star Chamber Proceeding, and the Unconstitutional practices of the System. It contrast, he jettisoned a 3½ year old complaint against another lawyer which presented an "open-and-closed" ethics case for committing 2 frauds upon the Court, which Mette based on lawyer associational grounds.

39.     The System is a Protection Racket that is specifically operated for purposes of the protection of lawyers associated with big law firms and government. The System is also an Organized Syndicate, existing to assert extra-legal charges against sole practitioners in order to

make it appear as if the ODC is actually carrying out its mandate to pursue ethical enforcement against Delaware lawyers. The System and the Star Chamber Proceeding are without any legitimacy based upon the illegal Scheme concocted by the ODC and carried out by it with the supervisory and knowing authority and approval of the 5 Members.

40. Fraudulent letters in furtherance of the Scheme and the Star Chamber Proceeding have been placed in the U.S. Mail system for delivery to Abbott by the Postal Service. In those letters, Vavala and/or Mette or his predecessor fraudulently represented, *inter alia*:1) the legal standard required for them to proceed beyond the screening and evaluation and investigation stages in the System; and 2) that Abbott committed ethical violations that were not validly asserted as a matter of fact and/or law.

41. More recently, Abbott filed a Motion to Dismiss with the 5 Members, based upon Rules 12(b)(6) and, 41, and the Doctrine of *Laches*. The DLRDP provides that Delaware Superior Court Rules apply and the Supreme Court has previously held that *Laches* applies to the System. Once again, Abbott's well-founded filing has been completely ignored. The 5 Members have exhibited a high degree of favoritism to the ODC, but they look a blind eye and turn a deaf ear to Abbott's appropriate submissions. The System is slanted and unfair. And the Scheme and Star Chamber Proceeding have denied Abbott fair and impartial treatment under the law.

42. Proof by "clear and convincing evidence" is not required until the Board Panel hearing stage of the System. Under the DLRDP, the standard for opening an investigation is merely "a reasonable inference of misconduct or incapacity" and the standard for pursuing charges from the PRC is "probable cause." But the ODC has falsely represented that the standard is higher, as part of its excuse for failing to pursue ethical violations committed by the lawyers that work for either government or big law firms. In each of these instances, Abbott presented facts, transcripts,

pleadings, letters, or the like to establish with a high degree of probability that one or more ethical violations had been committed. But discriminatory practices which now form a central tenet of the System prevent the ODC from pursuing slam dunk ethics violations against offending lawyers based on their employer associational status.

D.   The Scheme Has To Be Stopped At The PRC Stage Of The System; The Defendants Have A Habit Of Ignoring Due Process Requirements

43.   The System only grants the Board, which sits in 3 Member Panels to conduct hearings, power to issue a recommendation to the Supreme Court on a matter. The Supreme Court alone has the authority under the System to decide whether a violation has occurred or not. Thereafter, the Supreme Court has the authority to decide, by a separate, subsequent process, what sanction(s) (if any) are appropriate if a violation is found.

44.   At its whim and whimsy, the Supreme Court will disregard the Board recommendation involving sole practitioners. In some instances, the Supreme Court has rendered decisions that are conclusory, unfounded, and effectively constitute a ruling by pure *fiat*. Thus, the only stage at which a solo practice lawyer like Abbott can hope to avoid the arbitrary and unreasonable abuse of powers by the Supreme Court at the final stage in the System is at the PRC level. A lawyer must convince the PRC to not allow charges to be brought or else the ODC will railroad the lawyer and the Supreme Court has shown a willingness to oblige such ODC abuses. The Supreme Court has a past history of ruling in a fashion that disregards the facts and the law, so the PRC is the last hope for Abbott to avoid the pre-ordained conclusion that is part of the Scheme and the Star Chamber Proceeding.

45.   The Defendants' actions against Abbott over the past 4 years pursuant to the Scheme and the Star Chamber Proceeding have been in furtherance of their practice of intentional discrimination based upon Abbott's associational status as a sole practitioner and based on the

personal animus and unfounded attacks of the Vice Chancellor. Their targeting of Abbott without valid factual and legal grounds is based upon invidious discrimination.

E.    Equal Protection Of The Law Is Denied By Defendants

46.    There is no legitimate State interest at play in the Defendants' practice of discrimination between similarly situated lawyers who are in the classes of government attorneys, big law firm attorneys, and sole practice attorneys. Under the Equal Protection Clause, all lawyers should be treated equally by the ODC and the Supreme Court, but they expressly advantage the big law firm and government classes of attorneys and impose extra-legal standards to, and target, the sole practitioner attorney class. Discrimination in the System is also regularly practiced based on association of the lawyer in question and a judicial officer involved in the litigation. The Defendants have denied Abbott and similarly situated lawyers Equal Protection of the law.

47.    The disparate treatment of sole practitioners such as Abbott based upon their associational status stigmatizes the members of that disfavored group as innately inferior and raises the inference of animosity toward those solo practitioners impacted by the discriminatory classification practice of the Defendants.

48.    Even assuming *arguendo* that a suspect class were not at issue, no rational basis exists to support discrimination based on who a lawyer works for or is associated with, if anyone. Targeting lawyers of different classes, as the Scheme and Star Chamber Proceeding do, constitutes Unconstitutional disparate treatment ("Disparate Treatment").

49.    Abbott's Rights to Equal Protection under 5th and 14th Amendments to the U.S. Constitution are being violated by the Defendants' Disparate Treatment.

50.    For all relevant acts of Mette, his predecessor, and Vavala, the 5 Members have acted in a supervisory and administrative oversight capacity. The 5 Members had knowledge of the Scheme, the Star Chamber Proceeding, and other Racketeering and Unconstitutional conduct

of the ODC, Mette, his predecessor, and Vavala.[5]  But they have abdicated their role.

F.     The Scheme, Star Chamber Proceeding & System Contravene 1st Amendment
       Freedom Of Association Rights & Due Process Protections

51.    Abbott possesses a 1st Amendment right to Freedom of Association, which includes his right to not associate with other lawyers in the practice of law (*i.e.* a sole practice).  By intentionally discriminating against Abbott and other sole practitioner lawyers, the Defendants have established an unwritten policy or practice of Disparate Treatment without any valid basis to distinguish between the classes of lawyers.

52.    In so doing, the Defendants have mistreated a suspect class, which is established pursuant to the 1st Amendment Freedom of Association rights that they are violating pursuant to the Disparate Treatment.

53.    Indeed, the Defendants are aware of the Delaware Bar's realization that the System disproportionately targets sole practitioners.  In February of 2019, Mette announced at a Delaware Bar Association event that the top complaint he heard from Delaware lawyers during his recent state-wide "listening tour" was ODC targeting of solo practice lawyers.

54.    In this instance, the Defendants are also violating Abbott's Federal Constitutional Due Process rights under the 5th and 14th Amendments by: 1) failing to apprise Abbott of the operative rules governing lawyer conduct; 2) unduly dragging out a process for nearly 5 years; 3) changing course on allegations that it intends to pursue; 4) singling Abbott out for selective prosecution; 5) failing to advise Abbott of the charges that it intends to pursue against him; 6) refusing to disclose the rationale for the sudden and mysterious discharge of the former Chief Disciplinary Counsel; 7) allowing the former Chief Disciplinary Counsel to bring a Petition for

---

[5] Indeed, Abbott believes and therefore avers that Mette's predecessor was terminated from employment in part due to her actions *vis-à-vis* the Scheme (and possibly the Star Chamber Proceeding).  A cover-up is afoot.

Interim Suspension against Abbott that had no legitimate basis in fact or law; 8) refusing to consider Abbott's filings; and 9) pursuing charges against Abbott that lack any valid basis in fact.[6]

55.     The Defendants use the shroud of the **CONFIDENTIAL** System to hide their illegal practices. Abbott has been denied requests under applicable discovery rules and under the Delaware Freedom of Information Act which sought hard data to show the discriminatory practices of the Defendants. Yet again, Due Process is denied to Abbott in the Star Chamber Proceeding.

G.     The Unconstitutional "Pass" Given To Big Firm & Government Lawyers Adds To The Fraudulent Conspiracy

56.     By letters of various dates, the ODC has continued its fraudulent representations in furtherance of its Scheme and its Unconstitutional practices which render the System and the Star Chamber Proceeding illegitimate and invalid. The fraudulent letters of Mette, Mette's predecessor, Vavala, and other ODC Disciplinary Counsel can be summed up as follows:

> 1)     By letter dated September 16, 2013, Jennifer-Kate Aaronson refused to investigate a big firm lawyer's *ex parte* communications with a Judge which were undertaken with conscious intent to seek a partially case dispositive order, in obvious violation of 2 ethics rules. The grounds for declining to investigate was a statement by the Judge that amounted to an assertion that the ethical violation was "no big deal."

> 2)     By letter dated March 6, 2018, the ODC declined to investigate a complaint against a government attorney who had knowingly and intentionally filed a factually and legally unsupported motion in litigation, which violated numerous Ethics Rules. One of the grounds for declining to investigate was

---

[6] For example, Comment [1] to Rule 8.4 of what could be the 1985 Rules expressly provides that a lawyer is not prohibited "from advising a client concerning action the client is legally entitled to take." Although this principle is self-evident – legal advice to take legally permissible action is legal – it is also formally enshrined.

the lack of any statement by the Judge that an ethical violation occurred (even though that was not the Judge's duty to do).

3)   By letter dated February 28, 2019, Mette declined to pursue a complaint that had been pending since June 1, 2015 which presented proof positive of at least 5 ethics rule violations including disobedience to Court Orders, fraudulent procurement of Court Orders, and conduct intended to disrupt the tribunal or engage in undignified and discourteous conduct.  But that lawyer was favored by the Judge at issue and he worked for a relatively large law firm, thereby effectively immunizing him from investigation or prosecution given the corrupt nature of the System.

4)   By letter dated December 23, 2019, Vavala declined to investigate a lawyer who had lied to the Court in order to procure a case dispositive Order based upon the fact that the Court accepted the false representation of counsel (which is in and of itself basis for investigating and prosecuting).  But that lawyer worked for a relatively large law firm too, therefore he could not be prosecuted because the Scheme and the System do not allow it.

57.   Taken as a whole, these actions of the ODC evidence the consistent, invidiously discriminatory, and Constitutionally violative practices that make up the Scheme and the System. The Constitutional infirmity of the Scheme and the System are well established.  The Court should intervene to end such practices, and by virtue of their being inextricably intertwined with the Star Chamber Proceeding to bar any further actions against Abbott in that regard.

H.   The Defendants' Conspiracy & No Adequate Alternative Remedy Exists

58.   Vavala and Mette and Mette's predecessor conspired to carry out the Scheme versus Abbott.  They and the 5 Members have acted at all times relevant to this action under color

15

of State law. Abbott's license to practice law is a State law property interest at stake, which is being placed at risk based on the Scheme, the Star Chamber Proceeding, and the Unconstitutional acts.

59.     Mette, his predecessor, and Vavala have engaged in a nearly 5 year "fishing expedition" during which they have fraudulently alleged Abbott has committed ethical misconduct based on charges they have dropped or completely manufactured contrary to the facts and law. They have harassed Abbott to no end with their bad faith, factually and/or legally unfounded allegations. The truth is this sham matter has always had a pre-ordained end game; it was a conclusion seeking a rationale from the very beginning. It has now also become a personal vendetta against Abbott in retribution for his vigorous counter-attack to the corrupt actions taken against him.

60.     Abbott cannot bring the claims asserted herein as a part of any lawyer disciplinary proceedings. Mette claims Abbott cannot even bring a Motion to Dismiss. And the 5 Members have ignored Abbott's Motion to Dismiss. The System does not allow for Abbott to engage in discovery and present the Racketeering and Constitutional claims asserted herein.

## COUNT I – FEDERAL CIVIL RICO

61.     The contents of paragraph 1. through 60. are hereby restated as if fully set forth herein.

62.     The actions of the Defendants violate 18 U.S.C. § 1962(a), which makes it unlawful for a person to directly or indirectly acquire or maintain an interest or control of an enterprise engaged in or the activities of which affect interstate commerce through a pattern of Racketeering Activity.

63.     In addition, the Defendants' actions have violated 18 U.S.C. § 1962(d), which

makes it unlawful for a person to conspire to violate subsection (a).  All Defendants have worked in tandem to further the Scheme and advance the Star Chamber Proceeding.

64.     So too have the Defendants violated 18 U.S.C. § 1962(c), which declares it unlawful for a person associated with an enterprise which affects interstate commerce to directly or indirectly conduct or participate in the conduct of the enterprise's affairs through a pattern of Racketeering Activity.

65.     Specifically, the Racketeering Activity at issue is Mail Fraud in violation 18 U.S.C. § 1341, which constitutes Racketeering Activity pursuant to 18 U.S.C. § 1961(1)(B).

66.     18 U.S.C. § 1341 establishes that it is unlawful for a person to devise or intend to devise any scheme or artifice to defraud and to utilize the United States Mail operated by the Postal Service to execute the scheme or artifice or attempt to do so, or knowingly cause to be delivered by mail any such matter or thing.

67.     The misrepresentations made by the Defendants via the various correspondence sent to Abbott and posted in the United States Mail to be delivered to Abbott were material in nature.  *See* Exhibits hereto and paragraph 55 herein.  They allege serious (but false) ethical misconduct against Abbott and directly caused Abbott to expend considerable time, expense, and energy to react to and rebut.  They were intended to defraud Abbott and the PRC, by: a) harassing Abbott with threats of charges based on alleged predicate acts that are legal and permissible; and b) attempting to hoodwink the PRC into believing that the legal predicate acts could magically constitute ethical rule violations.  The Defendants have operated and overseen an Organized Syndicate aimed at intimidating Abbott and other sole practice lawyers and conducting a Protection Racket for their favored class of lawyers: big law firm and government attorneys.

68.     Although the Statute of Limitations for Civil RICO claims is 4 years, the Statute of

Limitations is not triggered until a plaintiff knew or should have known of the injury and the source of the injury. It was not until the ODC began sending fraudulent misrepresentation letters to Abbott and the PRC in or about July 2016 that Abbott became aware of the ongoing scheme to defraud being conducted by the Defendants.

69. The conduct of a pattern of Racketeering activity in matters *vis-à-vis* Abbott has been consistent and continual, and will continue in the future absent Court intervention.

70. The Defendants have been fully aware of the corrupt enterprise's activities, and have willingly participated in facilitating those activities. The 5 Members have been made aware of these activities, but they have failed to take action to address the illegal enterprise. Absent Court relief, the Defendants will continue to carry out the Scheme and Star Chamber Proceeding through the means of Mette and Vavala in order to further their Racketeering conspiracy and activity.

71. The Defendants have engaged in Mail Fraud under 18 U.S.C. § 1341 pursuant to the use of the United States Mail service in furtherance of the enterprise they have conducted via their association, established by their policies and practices over the past 10 years or more. Mail Fraud regarding Abbott has gone on for 4 years now regarding the Scheme, the Star Chamber Proceeding, and the Unconstitutional practices.

72. The System has been taken over and operated as an illegal enterprise for purposes of improperly targeting solo practitioner lawyers for prosecution and based on circumstances that do not constitute a violation of the 1985 Rules. In this process, the Defendants have also violated their own rules, including the DLRDP and the Rules of the Supreme Court of the State of Delaware (the "Supreme Court Rules"). Time and time again, the Defendants have shown through their actions that they will disproportionately target solo practitioner lawyers and attempt to persecute such lawyers based on *supra*-legal standards via trumped up charges, allegations that do not violate

the 1985 Rules, refusal to comply with requirements of the DLRDP, and failure to comport with the Supreme Court Rules.

73.     In addition, the Defendants have abused their powers and unlawfully utilized the System via the U.S. Mail as a Protection Racket in order to provide virtual immunity to lawyers that work for government and big law firms.  Time and time again, the Defendants have used the System for purposes of that Protection Racket.

74.     On numerous occasions, the Defendants have utilized the U.S. Mail in furtherance of their fraudulent Scheme to harm Abbott in order to whitewash the ethical misconduct of a fellow member of the Judicial Branch who has a personal animus against Abbott and disparaged Abbott with a pre-prepared false and inflammatory personal attack narrative prepared to gin up a record to entice the ODC to pursue a "fishing expedition" versus Abbott.

75.     The Defendants have also run the System based upon a lawyer's association with, and/or favoritism from, judicial officers, and their personal preferences and predilections.  If a Judge likes the lawyer in question or is indifferent to him or her conduct, then no action is taken in spite of clear-cut unethical misconduct evidence.  If a Judge dislikes a lawyer, however, then charges will be concocted and the process truncated and slanted to reach a pre-ordained conclusion by judicial *fiat*.

76.     The Defendants' scheme to harm sole practitioners and Abbott continues on, and will proceed unabated absent Court intervention to enjoin its continued unlawful conduct.

77.     The Defendants have conspired to carry out their unlawful enterprise and exhibited a multi-year intent to continue it going forward.  They have failed to cease or desist the illegal, discriminatory practices which render the entire System an illegal enterprise.

78.     As a direct and proximate cause of the fraudulent representations regarding Abbott,

he has been caused to suffer injury, to-wit: extensive time, stress and cost to respond to, rebut, and react to the illicit Scheme and Star Chamber Proceeding.

## COUNT II – VIOLATION OF FEDERAL CIVIL RIGHTS UNDER 42. U.S.C. § 1983

79.     The contents of paragraph 1. through 78. are hereby restated as if fully set forth herein.

80.     Pursuant to 42 U.S.C. § 1983, every person who under color of State law, custom, or usage, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

81.     The actions of the 5 Members were not undertaken in their judicial capacity. Instead, they were taken in their supervisory capacity over the ODC and their administrative capacity as overseers of the Bar.  Mette and Vavala are not members of the judiciary; they are mere staff persons.

82.     Under the 1st Amendment to the U.S. Constitution, Abbott is entitled to Freedom of Association.  Inherent in that right to Freedom of Association is the right not to associate with other lawyers in the practice of law – *i.e.* conduct his law practice as a sole practitioner.

83.     As stated hereinbefore, the System has been operated in practice by the Defendants in a fashion that invidiously discriminates against sole practitioner lawyers like Abbott by targeting them for prosecution far out of proportion to their percentage of the total Delaware Bar membership.  In addition, the Defendants have conducted the System by a second form of Disparate Treatment – *i.e.* use of practices that provide virtually absolute immunity to large law firm and government lawyers, despite their clear-cut violations of ethical Rules and evidence

establishing offenses such as *ex parte* communications, lawyer dishonesty, prejudice to the administration of justice, pursuit of actions that lack factual and/or legal merit, etc. The third form of Disparate Treatment is dependent on positive, negative, or neutral associations with Judges.

84.     Based upon the Defendants' violation of numerous of Abbott's Federal Constitutional Rights in the Star Chamber Proceeding, the Defendants have committed violations of 42 U.S.C. § 1983 entitling Abbott to appropriate equitable relief in the form of an injunction prohibiting any further action against him based upon the Star Chamber Proceeding.

85.     Abbott has a State law property interest in protecting his law license and the Star Chamber Proceeding has denied him Due Process of law. *First*, the 1985 Rules are not available and therefore no notice of what conduct is permissible has been provided. *Second*, Abbott's conduct at issue in this matter was perfectly legal and permissible, thereby precluding the possibility that there could be any valid basis to pursue an investigation, let alone seek formal charges against him. *Third*, Mette has refused to provide Abbott with information requisite to allow him to exercise his right under the DLRDP to provide a rebuttal submission to the PRC for its consideration at its February 5, 2020 meeting. *Fourth*, the 5 Members have denied Abbott his right to pursue a Motion to Dismiss, as permitted via the DLRDP's incorporation of Superior Court Rules.

86.     The System has a built-in bias which grants preference to the favored lawyer classes – big firm and government attorneys – and against the roundly disfavored class of solo practice attorneys. Indeed, virtually every member of the Supreme Court, the ODC, the Board, and the PRC hail from government or big law. And no Member of the Supreme Court, ODC, Board, or PRC come from a sole lawyer practice background. So it is no surprise that sole practitioners like Abbott are treated by the System and those organizations like pour stepchildren, mere second class

citizens.  But that bias is Unconstitutional.

87.     As a direct and proximate cause of the fraudulent representations regarding Abbott, he has been caused to suffer injury, to-wit: extensive time, stress and cost to respond to, rebut, and react to the illicit Scheme and Star Chamber Proceeding.

## COUNT III – VIOLATION OF STATE RICO

88.     The contents of paragraph 1. through 87. are hereby restated as if fully set forth herein.

89.     11 *Del. C.* § 1503(a) makes it unlawful for a person employed by or associated with any enterprise to conduct or participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

90.     11 *Del. C.* § 1503(d) makes it unlawful for a person to conspire or attempt to violate any of the provisions of subsection (a).

91.     A pattern of racketeering activity is defined by 11 *Del. C.* § 1502(5) to mean: (1) 2 or more incidents of conduct that constitute racketeering activity; (2) that are related to the affairs of the enterprise; (3) that are not so closely related to each other and connected in point of time and place that they constitute a single event; and (4) where one of the incidents occurred after July 9, 1986 and the last conduct occurred within 10 years of prior conduct.

92.     The term "enterprise" is defined by § 1502(3) as any individual and any association or group of persons associated in fact.  The term also includes governmental and other entities. The ODC and Supreme Court are government entities.  And the Defendants are associated with those entities.

93.     11 *Del. C.* § 1502(9) defines racketeering as engaging or attempting to engage in, or conspiring to engage in or soliciting, coercing or intimidating another person to engage in: any

activity defined as racketeering activity under 18 U.S.C. § 1961(1)(B).  That includes Mail Fraud in violation of 18 U.S.C. § 1341, as pled hereinbefore.

94.     The Defendants have conducted the System and the Star Chamber Proceeding, which constitute an enterprise that has engaged in Racketeering activity, including but not limited to the fraudulent use of the U.S. Mails to perpetrate their conspiracy to harm Abbott despite the lack of any legal and factual foundation for their nearly 5 year attack campaign against Abbott.

95.     The motivation for the Defendants to have unlawfully targeted Abbott is to harm Abbott, continue their practice of singling out sole practitioners for *supra*-legal requirements, and to beef-up their prosecutorial *bona fides*.  All the while, the Defendants have prevented their favored class of lawyers who work for big law firms and government from even being pursued based upon obvious violations of ethical requirements.  The double and triple standards applied have been carried out by the Defendants knowingly and intentionally.

96.     The Defendants' Scheme and Star Chamber Proceeding will proceed unabated absent Court intervention to enjoin its continued unlawful conduct.

97.     The Defendants have conspired to carry out their unlawful enterprise and exhibited a multi-year intent to continue it going forward.  They have failed to cease or desist the fraudulent and discriminatory practices which render the entire System an illegal enterprise.

## COUNT IV – DECLARATORY JUDGMENT

98.     The contents of paragraph 1. through 97. are hereby restated as if fully set forth herein.

99.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court is vested with authority to declare the rights and other legal relations between parties.

100.     The Court should enter a Declaratory Judgment holding that the Defendants must

cease further harassment, attacks, and prosecution of Abbott due to Constitutional infirmities and the illegal nature of the Scheme and the Star Chamber Proceeding.

101. The Court should also declare that: a) the Defendants have violated Federal and State RICO laws and 42. U.S.C. § 1983; and b) declare the System and the Star Chamber Proceeding invalid and unenforceable.

## COUNT V – TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION

102. The contents of paragraph 1. through 101. are hereby restated as if fully set forth herein.

103. Pursuant to 42 U.S.C. § 1983, the Defendants are subject to a "suit in equity" for redress of their deprivation of Abbott's federal statutory and Constitutional rights. Such equitable redress includes injunctive relief.

104. In addition, Rule 65 of the Federal Rules of Civil Procedure authorizes the issuance of a Temporary Restraining Order ("TRO") and a Preliminary Injunction.

105. Abbott can establish a reasonable probability of eventual success in the litigation and that he will be irreparably injured if interim injunctive relief is not granted to maintain the *status quo ante*. In addition, there exists no potential harm to the Defendants or the public interest arising from entry of a TRO and Preliminary Injunction.

106. Abbott has well-pled claims for: a) Federal and State RICO violations that are ongoing and will continue, pursuant to the Scheme and the Star Chamber Proceeding; and b) attributes of the System and the Star Chamber Proceeding which constitute violations of Abbott's U.S. Constitutional rights under the 1st, 5th, and 14th Amendments to Freedom of Association, Equal Protection, and Due Process.

107. If the Star Chamber Proceeding is not enjoined, then Abbott will not have an

opportunity to raise the claims asserted herein. Challenges to the System and the Star Chamber Proceeding on RICO and Constitutional grounds are not permitted by the System. In addition, the Defendants are generally immune from claims for money damages and various abstention doctrines make it difficult to raise the claims after the Star Chamber Proceeding is concluded. Lack of any remedy at law is *per se* proof of likely Irreparable Harm.

108.     No harm will befall the Defendants if a TRO and Preliminary Injunction are entered. They will merely be required to comply with the United States Constitution and Federal law. And the fact that the Star Chamber Proceeding is now nearly 5 years old establishes that the Defendants will suffer no hardship by further delay while this Court maintains the *status quo* and decides Abbott's significant substantive Federal law claims brought herein.

109.     Nor will the public interest be adversely affected by entry of interim injunctive relief. The fact that this matter has lingered on for nearly a half-decade establishes that there is no urgency or immediacy at stake. Therefore, a pause in the Star Chamber Proceeding while this Court has an opportunity to decide Abbott's weighty substantive Federal law claims cannot be adverse to the public interest. Indeed, the fact that Abbott has an opportunity to vindicate his rights and stop the harassment and bad faith conduct of the Defendants advances the public interest by furthering the interests of justice, rather than allowing the System to improperly railroad Abbott and harm his State property interest: his license to practice law.

## COUNT VII – PERMANENT INJUNCTION

110.     The contents of paragraph 1. through 109. are hereby restated as if fully set forth herein.

111.     Abbott can prove actual success on the merits of his claims for violations of Federal and State RICO and 42 U.S.C. § 1983. The Defendants have conspired to harm Abbott pursuant

to their unwarranted, 5-year effort to trump-up bogus allegations against him pursuant to their Mail Fraud scheme in contravention of both Federal and State RICO law. They have also trampled on Abbott's 1st, 5th, and 14th Amendment rights by denying him Equal Protection of the laws, Due Process of Law, and his 1st Amendment right to Freedom of Association. The inviduous discriminatory practices carried out by the Defendants in the System have operated as a Protection Racket to immunize the favored class of lawyers that they cover-up for: big law firm attorneys and attorneys that work for government. In direct contradistinction, however, the Defendants have carried out System practices as an Organized Syndicate, which disproportionately targets sole practitioner lawyers for prosecution and for application of *supra*-legal standards (*e.g.* attempting to pigeonhole perfectly legal lawyer conduct into rule violations based on an express intent to punish solo practice lawyers due to their associational status and lawyers personally disfavored by Judges).

112.   As set forth in the preceding Count, the other elements for Injunctive Relief are satisfied under the circumstances, warranting entry of Permanent Injunctive Relief to bar: a) the Scheme and any related proceedings against Abbott; b) any future efforts to prosecute Abbott or to pursue allegations against him arising from or related to the Star Chamber Proceedings; c) future Unconstitutional conduct of the System.

WHEREFORE, Abbott respectfully requests that this Court enter Judgment in his favor and against the Defendants as follows:

(1)   Enter a Temporary Restraining Order and Preliminary Injunction prohibiting pursuit of the Star Chamber Proceeding against Abbott in order to maintain the *status quo ante* until the Court can decide the validity of the Scheme and the Star Chamber Proceeding, and the Constitutionality of the System;

(2)    Enter a Permanent Injunction prohibiting the Star Chamber Proceeding against Abbott based upon the Racketeering and Constitutional infirmities of the Scheme, Star Chamber Proceeding, and System;

(3)    Enter a Declaratory Judgment establishing that the Scheme, System, and Star Chamber Proceeding constitute an unlawful Racketeering Enterprise and are Unconstitutional generally and as applied to Abbott, along with a Permanent Injunction barring such unlawful activities; and

(4)    Award Abbott his court costs, litigation expenses, and attorneys fees.

Richard L. Abbott, Esquire (#2712)
724 Yorklyn Road, Suite 240
Hockessin, DE 19707
(302) 489-2529

Dated: January 27, 2020