**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

RICHARD L. ABBOTT,         )
                                  )
        Plaintiff,        )
                                  )
    v.                      )    C.A. No.:  20-0131-RGA
                                  )
LUKE W. METTE, KATHLEEN M.    )
VAVALA, COLLINS J. SEITZ, JR.,    )
JAMES T. VAUGHN, JR., TAMIKA R.    )
MONTGOMERY-REEVES, GARY F.    )
TRAYNOR, and KAREN L. VALIHURA,  )
                                  )
        Defendants     )

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Defendants Collins J. Seitz, Jr., Karen L. Valihura, James T. Vaughn, Jr., Gary F. Traynor, Tamika R. Montgomery-Reeves, Luke W. Mette and Kathleen M. Vavala, hereby respond in opposition to Plaintiff Richard L. Abbott's Motion for a Temporary Restraining Order (D.I. 3), as directed by the Court.  (D.I. 4).  In support of this Response, Defendants state as follows:

## BACKGROUND

1.      Mr. Abbott, a member of the Delaware Bar since 1989 (D.I. 1, ¶ 1), is the subject of an ongoing disciplinary investigation by the Delaware Office of Disciplinary Counsel ("ODC"). (D.I. 1, ¶ 18).  Defendant Collins J. Seitz, Jr. is the Chief Justice of the Delaware Supreme Court. Defendants Karen L. Valihura, James T. Vaughn, Jr., Gary F. Traynor, and Tamika R. Montgomery-Reeves are Justices of the Delaware Supreme Court.  Defendant Luke Mette is the Chief Disciplinary Counsel at the ODC, and Defendant Kathleen Vavala is Deputy Disciplinary Counsel at the ODC.

1

2.      "The [Delaware Supreme] Court has the inherent and exclusive authority to regulate and discipline members of the Delaware Bar." *In re Abbott*, 925 A.2d 482, 484 (Del. 2007) (quoting *In re Froelich*, 838 A.2d 1117, 1120 (Del. 2003)). *See also* 10 *Del. C.* § 1906 and DEL. LAWYERS' R. DISCIPLINARY PROC. 1(a). The ODC is authorized by the Delaware Supreme Court to screen and evaluate all information concerning possible misconduct by a lawyer, which may be grounds for professional discipline. DEL. SUPR. CT. R. 64(e); DEL. LAWYERS' R. DISCIPLINARY PROC. 9. Following receipt of sufficient information, the ODC may present the matter to the Preliminary Review Committee ("PRC"). DEL. LAWYERS' R. DISCIPLINARY PROC. 9(b). The respondent is notified of the PRC meeting date and afforded the opportunity to submit written information for consideration by the PRC. *Id*. The ODC presents the matter to the PRC and may recommend the filing of a petition for discipline with the Board on Professional Responsibility (the "Board" or "BPR"). *Id*. The PRC "shall review the ODC's recommendation and any written information submitted by the respondent . . . and determine whether there is probable cause to conclude that the respondent has engaged in professional misconduct. The PRC may approve, disapprove, or modify ODC's recommendation, and may request additional information and investigation as it deems appropriate." DEL. LAWYERS' R. DISCIPLINARY PROC. 9(b)(3). If the PRC approves, formal disciplinary proceedings before the Board are commenced when ODC files a petition with the Board that is sufficiently clear and specific to inform the respondent of the alleged misconduct. DEL. LAWYERS' R. DISCIPLINARY PROC. 9(d). The respondent is served and may file an answer to the petition within 20 days. *Id*. After the filing of the petition for discipline, the respondent may compel by subpoena the testimony of witnesses and production of pertinent documents at a deposition or the hearing. DEL. LAWYERS' R. DISCIPLINARY PROC. 12(a)(2). At least twenty days in advance of the hearing date, notice of the hearing before

2

the Board is provided to respondent stating the respondent "is entitled to be represented by a lawyer at the respondent's expense, to cross examine witnesses, and to present evidence." DEL. LAWYERS' R. DISCIPLINARY PROC. 9(d)(3). Prehearing conferences may be held upon request of a party or at the discretion of the Chair of the Hearing Panel to address "administrative, evidentiary, or procedural issues…or for other reasons." DEL. LAWYERS' R. DISCIPLINARY PROC. 15(e). Board hearings are recorded, witnesses are sworn, and the Board may permit briefs, memoranda, and oral argument. DEL. LAWYERS' R. DISCIPLINARY PROC. 9(d)(4) and (f). The ODC bears the burden of proving respondent's misconduct by clear and convincing evidence. DEL. LAWYERS' R. DISCIPLINARY PROC. 15(c) and (d). If the Board finds the respondent has engaged in professional misconduct, it then makes a separate finding as to the appropriate disciplinary sanction and may consider aggravating and mitigating factors. DEL. LAWYERS' R. DISCIPLINARY PROC. 9(d)(4). The Board submits to the Court "a final report containing its findings, reasons, and recommendations," which is served on respondent. DEL. LAWYERS' R. DISCIPLINARY PROC. 9(d)(5). The ODC and respondent may file objections to the Board's recommendation for the Supreme Court's review. DEL. LAWYERS' R. DISCIPLINARY PROC. 9(e). The ultimate decision as to whether discipline should be imposed and the extent of any discipline is within the sole discretion of the Delaware Supreme Court, whose decision is final on issuance. DEL. SUPR. CT. R. 63.

3.      In 2015, Vice Chancellor Sam Glasscock, III referred to the ODC a matter regarding Mr. Abbott. (D.I. 1, ¶ 18). The substance of an ODC investigation is confidential; but according to the Complaint filed in this matter, the ODC's investigation of Mr. Abbott includes an inquiry into his "advice to his client on how to potentially avoid a Court Judgment (not in disobedience to any Order provisions); and [Mr. Abbott's] preparation of 2 Deeds transferring title to 2 houses owned by his client to his client's wife (which was also not forbidden by any

outstanding Court Order)."  (D.I. 1, ¶ 20).  By letter dated September 13, 2016, Mr. Abbott was informed a petition for discipline would be presented to the PRC.  (D.I. 1, Ex. A).  Mr. Abbott was afforded the opportunity to submit a written statement to the PRC and did so by letter dated September 29, 2016.  (D.I. 1, Ex. D).  As part of his statement, Mr. Abbott requested that the preliminary presentation be "postponed and stayed" pending resolution of a separate action Mr. Abbott instituted against the then-Chief Disciplinary Counsel.  (D.I. 1, Ex. D, at *3); *Abbott v. Del. State Pub. Integrity Comm'n*, 206 A.3d 260 (Del. 2019).  The ODC's presentation to the Preliminary Review Committee was postponed as requested.[1]  In March 2018, the ODC filed a Petition for Interim Suspension against Mr. Abbott.  (D.I. 1, ¶ 36).  The Delaware Supreme Court stayed consideration of that Petition and the ODC ultimately withdrew the Petition.  *Id.*  Following the resolution of Mr. Abbott's case against the then-Chief Disciplinary Counsel, by letter dated December 16, 2019, the ODC again notified Mr. Abbott that the matter would be presented to the Preliminary Review Committee on January 8, 2020.  (D.I. 1, Ex. E).  The presentation was again postponed at Mr. Abbott's request, and by letter dated January 14, 2020, Mr. Abbott was notified that the ODC intends to proceed with the presentation of this matter to the Preliminary Review Committee on February 5, 2020.  (D.I. 1, Ex. F).  On January 27, 2020, Mr. Abbott filed a Complaint and Motion for a Temporary Restraining Order with this honorable Court.  This is the Defendants' response in opposition to Mr. Abbott's Motion for a Temporary Restraining Order.

---

[1] The recitation of the procedural history of ODC's investigation in the Complaint and Motion for a Temporary Restraining Order is incomplete.  Applicable rules of confidentiality regarding lawyer disciplinary matters constrain a more comprehensive recitation in this Response.  *See generally* DEL. LAWYERS' R. DISCIPLINARY PROC. 13.

## ARGUMENT

4.      A motion for a temporary restraining order is subject to the same standards as a

motion for preliminary injunction.  *Intercept Pharms., Inc. v. Fiorucci*, 2016 WL 6609201, at *1

(D. Del. Jan. 28, 2016).  A preliminary injunction is an extraordinary remedy that should be granted

in limited circumstances only if the movant carries his burden of proving that the circumstances

clearly demand it.  *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  "It may be

granted only when the moving party shows (1) a likelihood of success on the merits; (2) that the

movant will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief

will not result in even greater harm to the nonmoving party; and (4) that the public interest favors

such relief."  *Doe by and through Doe v. Boyertown Area Sch. Dist*., 897 F.3d 518, 526 (3d Cir.

2018).  The movant carries a heavy burden and must establish entitlement to such injunctive relief

by clear evidence.  *Deluna v. Del. Harness Racing Comm'n*, 2019 WL 5067198, at *2 (D. Del.

Oct. 9, 2019).  "Failure to establish any of the elements, especially either of the first two, renders

preliminary injunctive relief 'inappropriate.'"  *Id.* (quoting *Arrowpoint Capital Corp. v.

Arrowpoint Asset Mgmt., LLC,* 793 F.3d 313, 319 (3d Cir. 2015)).

### Plaintiff Has No Likelihood of Success on the Merits

5.      In the instant action, the first element is dispositive as it requires Mr. Abbott to

demonstrate that he is likely to succeed in this Court on the claims he asserts.  Mr. Abbott cannot

so demonstrate.  The Complaint asserts three legal causes of action that will not be successful,

specifically: (1) federal civil RICO violations; (2) federal civil rights violations brought pursuant

to 42 U.S.C. § 1983; and (3) state civil RICO violations.  (D.I. 1).  Where, as here, it is well settled

that a federal court will abstain from hearing the merits of a case, there is no likelihood of success

and the request for a preliminary injunction should be denied.

6.     When a plaintiff raises constitutional challenges to the conduct of an ongoing state-court proceeding, this Court must abstain from considering the plaintiff's claims under the *Younger* abstention doctrine.    *Younger v. Harris*, 401 U.S. 37 (1971) (holding that federal courts are prevented from hearing civil rights tort claims brought by persons currently being prosecuted in state court).   The Supreme Court of the United States has unequivocally held that the *Younger* abstention doctrine precludes an attorney facing disciplinary action by a state court from raising constitutional challenges to that disciplinary scheme in federal court.    *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).   The result should be no different here. *See Gielata v. Rocanelli¸* C.A. No. 1:05-cv-00567-GMS, Or. at 5 (D. Del. May 19, 2006) ("Here, as in *Middlesex*, the disciplinary proceedings satisfy the first two prongs of the *Younger* inquiry").

7.     In *Middlesex,* the Supreme Court of the United States held that "a federal court should abstain from considering a challenge to the constitutionality of disciplinary rules that are the subject of pending state disciplinary proceedings . . . ."   *Middlesex*, 457 U.S. at 425.   The Court emphasized that *Younger* and its progeny adopt a strong federal policy against interfering with pending state judicial proceedings.   *Id.* at 431.   "The notion of 'comity' includes 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States *and their institutions* are left free to perform their separate functions in their separate ways.'"   *Id.* (citing *Younger*, 401 U.S. at 44) (emphasis added).

8.     The Third Circuit has articulated a three-part test to consider whether the *Younger* abstention doctrine should apply to proceedings such as those Mr. Abbott currently faces in Delaware:

> A federal court should abstain under the *Younger* doctrine when there are (1) ongoing state proceedings that are judicial, (2) the proceedings implicate important

state interests, and (3) the proceedings afford an adequate opportunity to raise the federal claims. In these circumstances, federal courts should abstain unless there is a showing of 'bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'

*Cresci v. BCB Cmty. Bank*, 728 F. App'x 145, 148 (3d Cir. 2018) (citing *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989) (internal citations omitted)). Delaware's lawyer disciplinary process satisfies this three-part test, thus requiring abstention and denial of Mr. Abbott's motion.

9. First, there is no question that the Delaware lawyer disciplinary process constitutes an ongoing state judicial proceeding. *Gielata v. Rocanelli¸* C.A. No. 1:05-cv-00567-GMS, Or. at 5. In Delaware, a lawyer's professional obligations are governed by the Delaware Lawyers' Rules of Professional Conduct. Disciplinary proceedings are conducted pursuant to rules established by the Delaware Supreme Court. DEL. SUPR. CT. R. 62(d); *see also* DEL. LAWYERS' R. DISCIPLINARY PROC. Members of the PRC and the BPR are appointed by that same Supreme Court. DEL. SUPR. CT. R. 62(a) & (c). Moreover, the Delaware Supreme Court "has the inherent and exclusive authority to regulate and discipline members of the Delaware Bar." *In re Abbott,* 925 A.2d 482, 484 (Del. 2007) (quoting *In re Froelich,* 838 A.2d 1117, 1120 (Del.2003)); *see also* 10 *Del. C.* § 1906; DEL. LAWYERS' R. DISCIPLINARY PROC. 1(a). The Supreme Court of the United States considered New Jersey's almost identical disciplinary structure in *Middlesex*, holding "[i]t is clear beyond doubt that the New Jersey Supreme Court considers its bar disciplinary proceedings as 'judicial in nature.' As such, the proceedings are of a character to warrant federal-court deference." *Middlesex*, 457 U.S. at 433.

10. The second prong of the Third Circuit's articulated test for abstention requires implication of an important state interest. The Supreme Court of the United States has recognized that states, like the State of Delaware, have extremely important interests in maintaining and assuring the professional conduct of the attorneys they license. *See id*. at 434 ("The State of New

Jersey has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses. States traditionally have exercised extensive control over the professional conduct of attorneys."); *see also Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995) (citing *Goldfarb v. Virginia Bar*, 421 U.S. 773 (1975)) ("States have a compelling interest in the practice of professions within their boundaries, and . . . as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.").  Further, Delaware's sovereign interest in administering the practice of law and its own judiciary are clearly implicated in the instant action insofar as the Chief Justice and all Justices of the Delaware Supreme Court are named Defendants along with the Chief Disciplinary Counsel and Deputy Disciplinary Counsel of the State's ODC. When these important state interests are present, "a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'"  *Middlesex*, 457 U.S. at 434 (citing *Moore v. Sims*, 442 U.S. 415, 426 (1979)).

11.     The third prong of the Third Circuit's three-part test for abstention requires this Court to examine whether the plaintiff will have an "adequate opportunity" to raise his constitutional arguments at the state level.  *Cresci*, 728 F. App'x at 148.  In *Middlesex,* the Supreme Court of the United States established the presumption that a state court is an adequate forum to raise constitutional issues.  *Middlesex*, 457 U.S. at 431 ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights."); *see also Rose v. Utah*, 399 F. App'x 430, 435 (10th Cir. 2010) (applying the presumption that the state court, where disciplinary proceedings were pending, was an adequate forum for presenting constitutional challenges).  "The burden on this point rests on the federal plaintiff to show 'that state procedural law *barred* presentation of [his] claims.'"  *Pennzoil Co. v. Texaco, Inc.*,

481 U.S. 1, 14 (1987) (emphasis added).  Simply stated, the "'accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.'"  *Younger,* 401 U.S. at 45 (quoting *Fenner v. Boykin*, 271 U.S. 240, 244 (1926)).

12.     Here, there is no indication that either the Preliminary Review Committee, the BPR, or the Delaware Supreme Court will refuse to consider a constitutional challenge to its proceedings or one of the rules.  *Middlesex*, 457 U.S. at 435 (explaining that state ethics committee members are "constantly . . . called upon to interpret the state disciplinary rules" and that it is unlikely that "the members of the Ethics Committee, the majority of whom are lawyers, would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees"); *see also Fieger v. Thomas*, 74 F.3d 740, 747-48 (6th Cir. 1996) (same).  Likewise, the Delaware Supreme Court is empowered to hear federal constitutional challenges.  *Slawik v. State*, 480 A.2d 636 (Del. 1984) (determining whether a plaintiff had a federal property interest in his employment).  Federal constitutional challenges to lawyer disciplinary proceedings under the Delaware Lawyer's Rules of Professional Conduct have been raised in proceedings before the BPR and the Delaware Supreme Court.  *See, e.g., In re Tennenbaum,* 918 A.2d 1109 (Del. 2007) (finding no due process violation based on laches defense);  *In re Shearin*, 765 A.2d 930 (Del. 2000) (addressing the First Amendment defense of attorney charged with violating Delaware Lawyer's Rules of Professional Conduct Rule 8.2); *In re Kennedy*, 472 A.2d 1317 (Del. 1984), *cert. denied*, 467 U.S. 1205 (1984) (addressing attorney's due process claims and constitutional vagueness challenge); *In re Bailey*, 821 A.2d 851 (Del. 1983) (finding no Fourteenth Amendment due process violation in disciplinary proceeding conducted by BPR).  There is no rule or law precluding Mr. Abbott from raising federal or state affirmative defenses during the disciplinary

proceedings.  Accordingly, the third prong of the Third Circuit's articulated test for abstention has been met.

13.     Finally, Mr. Abbott has not articulated any additional circumstances that would make abstention inappropriate.  The plaintiff bears the burden of establishing that bad faith, harassment, or extraordinary circumstances are present preventing this Court from exercising abstention.  *Getson v. New Jersey*, 352 F. App'x 749, 753-55 (3d Cir. 2009) (defining bad faith and harassment in a licensure disciplinary action as requiring a showing that the proceeding was brought "without hope of success"; and defining extraordinary circumstances in licensure actions as only those "creating an extraordinarily pressing need for immediate federal equitable relief"). Mr. Abbott admits in his Complaint that the ODC investigation originated, not with the ODC, but by a referral from a sitting Delaware judge for alleged misconduct occurring before him.  (D.I. 1, ¶ 18).  At this stage, Mr. Abbott must establish more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Getson*¸ 352 F. App'x at 755 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The naked assertions in the Complaint here, devoid of sufficient factual support, are clearly insufficient and do not meet the standard of proving bad faith, harassment or extraordinary circumstances.  *See Getson*, 352 F. App'x at 755 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Murphy v. Office of Disciplinary Counsel*, 2019 WL 4752059 (E.D. Pa. Sep. 30, 2019) (finding the three prongs of *Younger* are met and an attorney's allegations of bad faith and harassment that are conclusory in nature will not "carry the day" to invoke federal review of constitutional challenges to that state's attorney disciplinary process). Accordingly, there is nothing before this Court that demonstrates abstention would be inappropriate.

14.     The abstention doctrine articulated in *Younger* and its progeny, extended to state attorney disciplinary proceedings in *Middlesex*, and clarified within this circuit by *Cresci* make clear that this Court will not interfere with an ongoing state-court proceeding affecting substantial state interests where, as here, federal challenges may be considered by the state court.[2] Accordingly, Mr. Abbott has not met his burden of proving a likelihood of success on the merits, and it is respectfully submitted that the Motion for a Temporary Restraining Order must be denied.

### Plaintiff Will Not Suffer Irreparable Harm if Injunctive Relief is Denied

15.     Falling short of establishing a likelihood of success on the merits, the Motion for a Temporary Restraining Order further fails to meet the burden of showing irreparable harm will befall Mr. Abbott should the motion be denied.  Establishing a risk of irreparable harm is not enough.  *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987); *see also Deluna v. Delaware Harness Racing Comm'n*, 2019 WL 5067198, at *2-3 (D. Del. Oct. 9, 2019) (finding plaintiff's conclusory allegations, unsupported by specific evidence, did not meet "clear evidence" burden sufficient to establish irreparable harm).  A plaintiff has the burden of proving a "clear showing of immediate irreparable injury."  *Cont'l Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980).  The current posture of the administrative proceedings coupled with the due process protections embedded within the structure of those proceedings yet to come render such a showing impossible.

---

[2] The Complaint fails for several additional reasons, including its failure to state a claim, failure to allege specific facts against individual defendants as required by Section 1983, judicial immunity, quasi-judicial immunity, prosecutorial immunity, the bar on injunctive and declaratory relief for judicial actions, qualified immunity, Eleventh Amendment immunity, and immunity for state torts.  Defendants do not waive any of these defenses and may assert them as the case continues.

16.     The PRC has not yet been convened in this matter.  The matter is scheduled to be presented to PRC for a probable cause determination and approval of a petition for discipline on February 5, 2020.  (D.I. 1, Ex. F).  The Motion for Temporary Restraining Order asserts that "relief may be unavailable once the matter gets past the Preliminary Review Committee stage . . . ."  (D.I. 3, ¶ 5).  The presentation to the Preliminary Review Committee is akin merely to a probable cause hearing, with the addition that Mr. Abbott has been afforded the opportunity to submit a written statement to this body.  DEL. LAWYERS' R. DISCIPLINARY PROC. 9(b)(1); (D.I. 1, Ex. F).  Mr. Abbott has taken advantage of this opportunity by submitting voluminous materials on January 30, 2020 for consideration by the PRC.  A formal petition for discipline will be filed with the BPR if, and only if, the PRC so approves.  DEL. LAWYERS' R. DISCIPLINARY PROC. 9(d)(1).  The BPR cannot impose a final order of discipline, but will instead conduct a full evidentiary hearing, affording Mr. Abbott due process, and ultimately issuing a non-binding recommendation to the Delaware Supreme Court.  *In re Froelich,* 838 A.2d 1117, 1120 (Del. 2003) ("Sanctions recommended by the Board often aid in [the Court's] determination, but are not binding on [the] Court.").

17.     The Delaware Supreme Court independently reviews the BPR's final report, including the BPR's factual findings and conclusions of law, and any objections of the ODC or the respondent attorney.  DEL. LAWYERS' R. DISCIPLINARY PROC. 9(e); *see also Shearin*, 721 A.2d at 165.  The Delaware Supreme Court reviews the BPR's factual findings to determine whether the record contains substantial evidence to support those findings.  *Id.* (citing *In re Higgins,* 582 A.2d 929, 932 (Del. 1990)); *see also In re Mekler*, 669 A.2d 655, 663 (Del. 1995).  The Delaware Supreme Court reviews the BPR's conclusions of law *de novo.*  *Shearin*, 721 A.2d at 165.  This disciplinary procedure established by the Delaware Supreme Court is replete with due process

protections and affords licensees the opportunity to be heard.  Far from creating irreparable harm, permitting the attorney disciplinary action to proceed against Mr. Abbott in the normal course here will effectuate the goal of protecting the public by regulating the practice of the legal profession, while providing Mr. Abbott a full and fair opportunity to confront the claims asserted against him.

18.     Mr. Abbott currently possesses an unencumbered license to practice law in the state of Delaware.  Any harm that Mr. Abbott suspects he may suffer at this early stage is clearly "reparable" through his participation in the disciplinary process.  *Abbott v. State Public Integrity Comm'n*, 206 A.3d 260 (Del. 2019) ("[T]he process for attorney discipline has extensive procedural due process protections for parties like [Mr. Abbott], including the ability to appeal any determination of the BPR to this Court"); *see also Bolin v. Story*, 225 F.3d 1234, 1243 (11th Cir. 2000) (finding no irreparable harm where a party has the ability to appeal and seek *certiorari* and the ability to seek writ).

### Injunctive Relief will Prejudice the State of Delaware Due to the State's Interest in Regulating the Practice of Law for Public Protection

19.     Although the Plaintiff will suffer no irreparable harm should the Motion for a Temporary Restraining Order be denied, this Court cannot reach the same conclusion regarding the harm to Defendants if injunctive relief is awarded.  The state of Delaware has a compelling interest in maintaining its justice system, assuring the professional conduct of the attorneys it licenses, and conducting efficient, timely reviews of that conduct in order to protect the ultimate recipients of legal services—the people of Delaware.  "The ultimate objective of such control is 'the protection of the public, the purification of the bar and the prevention of a re-occurrence.'" *Middlesex*, 457 U.S. at 434; *see also In re Fountain*, 878 A.2d 1167, 1173 (Del. 2005) ("The focus of the lawyer disciplinary system in Delaware is not on the lawyer, but rather on the danger to the public that is ascertainable from the lawyer's record of professional misconduct.").  As the

Delaware Supreme Court itself has held, "[t]he objectives of the lawyer disciplinary system are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct." *In re Bailey*, 821 A.2d 851, 866 (Del. 2003) (citing *In re Figliola*, 652 A.2d 1071, 1076 (Del. 1995), *reinstatement granted*, 842 A.2d 1244 (Del. 2004)); *In re Reardon*, 759 A.2d 568, 575 (Del. 2000) (same).  Where, as here, Defendants seek to protect the public and preserve confidence in the legal profession by regulating the practice of law while affording licensees all constitutional protections before reaching any decision regarding discipline, the balance of equities weighs in favor of allowing that process to continue without federal intervention.

WHEREFORE, Defendants respectfully request that this honorable Court deny Plaintiff's Motion for Temporary Restraining Order.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/      *Patricia A. Davis*
Patricia A. Davis, I.D. #3857
George T. Lees, III, I.D. #3647
Allison McCowan, I.D. #5931
Deputy Attorneys General
820 N. French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
PatriciaA.Davis@delaware.gov
George.Lees@delaware.gov
Allison.McCowan@delaware.gov
*Counsel for Defendants*

Dated:  January 31, 2020

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RICHARD L. ABBOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.:  20-131-RGA |
| | ) | |
| LUKE W. METTE, KATHLEEN M. | ) | |
| VAVALA, COLLINS J. SEITZ, JR., | ) | |
| JAMES T. VAUGHN, JR., TAMIKA R. | ) | |
| MONTGOMERY-REEVES, GARY F. | ) | |
| TRAYNOR, and KAREN L. VALIHURA, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

  **AND NOW, TO WIT,** this _____day of _____, 2020, Plaintiff's Motion for Temporary Restraining Order and Defendants' Response in Opposition having been heard and considered,

  **IT IS ORDERED** that Plaintiff's Motion is hereby **DENIED.**


_____
HONORABLE RICHARD G. ANDREWS
UNITED STATES DISTRICT JUDGE