IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICHARD L. ABBOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-131-RGA |
| | ) | |
| LUKE W. METTE, KATHLEEN M. | ) | |
| VAVALA, COLLINS J. SEITZ, JR., | ) | |
| JAMES T. VAUGHN, JR., TAMIKA R. | ) | |
| MONTGOMERY-REEVES, GARY F. | ) | |
| TRAYNOR, and KAREN L. VALIHURA, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court in this matter is a motion to dismiss Plaintiff Richard L.

Abbott's ("Plaintiff") Amended Complaint (the "Motion"). (D.I. 17) The Motion is brought by

Defendants Luke W. Mette, Kathleen M. Vavala, Collins J. Seitz, Jr., James T. Vaughn, Jr.,

Tamika R. Montgomery-Reeves, Gary F. Traynor and Karen L. Valihura (collectively

"Defendants") pursuant to Federal Rule of Civil Procedure 12. For the reasons that follow, the

Court recommends that the Motion be GRANTED.

I.     BACKGROUND

A.     Factual Background

1.     The Parties and Relevant Agencies/Entities

Plaintiff is a Delaware resident and a member of the Delaware Bar ("the Bar"). (D.I. 16

at ¶ 1) He has been a member of the Bar in good standing since December 14, 1989. (*Id.*)

Defendant Collins J. Seitz, Jr. is the Chief Justice of the Delaware Supreme Court, and

Defendants James T. Vaughn, Jr., Tamika R. Montgomery-Reeves, Gary F. Traynor and Karen

L. Valihura are Justices of the Delaware Supreme Court.  (*Id*. at ¶¶ 4-8)  Defendants Luke W. Mette and Kathleen M. Vavala are respectively employed as the Chief Disciplinary Counsel and Disciplinary Counsel of the Office of Disciplinary Counsel ("ODC"), which is an agency of the Delaware Judicial Branch.  (*Id*. at ¶¶ 2-3)

The Delaware Supreme Court Rules and the Delaware Lawyers' Rules of Disciplinary Procedure ("DLRDP") established the ODC, as well as the Preliminary Review Committee ("PRC").  (*Id*. at ¶¶ 12-13)  The Delaware Supreme Court established the ODC to investigate attorney misconduct that may be grounds for discipline.  Del. Supr. Ct. R. 64(e).  The ODC, in turn, may present a matter to the PRC and recommend the filing of a petition for discipline ("Petition") with the Board of Professional Responsibility ("BPR").  (D.I. 16 at ¶¶ 17-18)

If the ODC presents a matter to the PRC in this way, the respondent attorney ("respondent") may submit written information for the PRC's consideration.  DLRDP 9(b).  The PRC determines whether there is probable cause to conclude that the respondent engaged in professional misconduct and it may either approve, disapprove or modify the ODC's recommendation.  DLRDP 9(b)(3).  If the PRC approves a petition for discipline recommended by the ODC, then the ODC files the Petition with the BPR; thereafter, the respondent may file an Answer.  DLRDP 9(c).  The BPR next conducts an evidentiary hearing, at which the ODC bears the burden of proof by clear and convincing evidence.  DLRDP 15(d).  If the BPR finds that the respondent engaged in professional misconduct, it makes a finding as to what is the appropriate disciplinary action.  DLRDP 9(d).  The BPR submits a final report containing its recommended findings of fact, conclusions of law and recommended discipline to the Delaware Supreme Court.  *Id*.  The parties may file objections to this report and recommendation, and thereafter, the

Delaware Supreme Court makes the final decision as to whether to impose discipline on the respondent.  *Id*.; Del. Supr. Ct. R. 63.

## 2.    Events Leading to the Filing of the Instant Case

The Amended Complaint alleges that in May 2015, Sam Glasscock, III, a Vice Chancellor of the Delaware Court of Chancery, filed a complaint (the "complaint") with the ODC regarding Plaintiff.  (D.I. 16 at ¶ 21)  In the complaint, Vice Chancellor Glasscock took issue with Plaintiff's conduct while litigating a civil action in Delaware state court; more specifically, the substance of the complaint related to Plaintiff's:  (1) "advice to his client on how to potentially avoid a [c]ourt [j]udgment;" and (2) "[Plaintiff's] preparation of [two] [d]eeds transferring title to [two] houses owned by his client to his client's wife[.]"  (*Id*. at ¶ 23)

On September 13, 2016, the ODC advised Plaintiff by letter that it intended to present a Petition regarding his conduct to a panel of the PRC on October 5, 2016.  (*Id*., ex. B)  With the Petition, the ODC intended to assert that, as part of his work on the civil matter before Vice Chancellor Glasscock, Plaintiff had violated Rules 3.5(d), 4.4(a) and 8.4(d) of the Delaware Lawyer's Rules of Professional Conduct ("DLRPC").  (*Id*., ex. C)  Plaintiff thereafter submitted a written statement to the PRC on September 29, 2016 in which, *inter alia*, Plaintiff requested that the matter before the PRC be postponed and stayed pending resolution of a separate state legal action that Plaintiff had filed against then-Chief Disciplinary Counsel Jennifer-Kate Aaronson.  (*Id*., ex. D at 3)  The matter was later stayed, pending the resolution of the state court action.  (D.I. 18 at 4)

In March 2018, the ODC filed a Petition for Interim Suspension regarding Plaintiff (the "March 2018 Petition"); thereafter, the Delaware Supreme Court stayed that matter.  (D.I. 16 at ¶ 41)  Plaintiff alleges that he then "sought relief from [the] [s]tay to file a response, but the

3

Supreme Court ignored it[.]" (*Id.* at ¶ 41)  In 2019, Defendant Mette ("Mette"), who had by this point become Chief Disciplinary Counsel, dismissed the March 2018 Petition.  (*Id.* at ¶ 43)

On December 16, 2019, the ODC notified Plaintiff that it would now present its Petition to the PRC on January 8, 2020, and that it now asserted that Plaintiff had violated Rules 3.4(c), 3.5(d), 8.4(a) and 8.4(d) of the DLRPC.  (*Id.*, ex. E; D.I. 18 at 4)  After another postponement, on January 14, 2020, Plaintiff was notified by the ODC that it intended to present the Petition to the PRC on February 5, 2020, and that it was now alleging that Plaintiff had violated Rules 3.4(c), 3.5(d), 8.4(a), 8.4(c) and 8.4(d) of the DLRPC.  (D.I. 16, ex. F)

Plaintiff thereafter filed the instant suit in this Court on January 27, 2020.  (D.I. 1)  On the same day, Plaintiff filed a Motion for Temporary Restraining Order ("TRO" or the "TRO Motion"), in which he requested that the Court "prohibit further action by Defendants regarding the investigation and any attempts at prosecution in a pending lawyer discipline matter[.]"  (D.I. 3 at 1)  The instant case was assigned to United States District Judge Richard G. Andrews.  On February 3, 2020, the District Court denied the TRO Motion in a written Order.  (D.I. 12)

Thereafter on February 5, 2020, the PRC approved a Petition for Discipline (the "2020 Petition") against Plaintiff.  (D.I. 16 at ¶ 67; *id.*, ex. K)  The 2020 Petition alleges that Plaintiff violated each of the five rules that had been referenced in the ODC's January 14, 2020 letter.  (D.I. 16 at ¶¶ 67-77; *id.*, ex. K)  Plaintiff contends that all of these allegations are "factually and/or legally spurious."  (*Id.* at ¶ 78)

### B.    Procedural Background

As noted above, Plaintiff filed his Complaint in this case on January 27, 2020.  (D.I. 1) Plaintiff then filed the currently operative Amended Complaint on March 9, 2020.  (D.I. 16) Plaintiff's Amended Complaint alleges six counts against Defendants:  Count I is a federal claim

for violation of the civil RICO statute, pursuant to 18 U.S.C. § 1962, (*id.* at ¶¶ 87-106); Count II alleges violation of 42 U.S.C. § 1983 ("Section 1983") relating to claims brought pursuant to the First and Fourteenth Amendments, (*id.* at ¶¶ 107-17); Count III is a claim alleging violation of the Delaware state RICO statute, pursuant to Del. Code Ann. tit. 11, §§ 1502 & 1503, (*id.* at ¶¶ 118-28); Count IV is a claim seeking a declaratory judgment pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, (*id.* at ¶¶ 129-32); Count V is a claim seeking a temporary restraining order and preliminary injunction, filed pursuant to Section 1983 and Rule 65 of the Federal Rules of Civil Procedure, (*id.* at ¶¶ 133-40); and Count VI is a claim seeking a permanent injunction, (*id.* at ¶¶ 141-44).

After Plaintiff filed his Amended Complaint, Defendants filed the instant Motion on March 23, 2020.  (D.I. 17)  The Motion was fully briefed as of April 29, 2020.  (*See* D.I. 22) The District Court referred the Motion to the Court for resolution on July 14, 2020.  (D.I. 23)

## II.    DISCUSSION

In their Motion, Defendants' leading argument is that Plaintiff's Amended Complaint should be dismissed under the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971), and clarified in *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).  (D.I. 18 at 5-9; D.I. 22 at 1-6)  The Court will first set out the applicable legal standard. It will then explain why it agrees with Defendants that abstention is the proper course here, requiring dismissal of Plaintiff's Amended Complaint.[1]

### A.    Legal Standard[2]

---

[1]       In light of this conclusion, the Court does not reach Defendants' alternative arguments for dismissal.  (D.I. 18 at 9-20; D.I. 22 at 6-10)

[2]       Defendants filed their motion pursuant to Fed. R. Civ. P. 12 generally, (D.I. 17), and did not specify which portion of Rule 12 applies to their abstention argument, (D.I. 18 at 5-9; *see also id.* at 13 (specifying that Fed. R. Civ. P. 12(b)(6) applies to their alternative argument

As a general matter, assuming that a federal court has jurisdiction over a case, the federal court's "obligation to hear and decide [the] case is virtually unflagging." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (internal quotation marks and citation omitted). The *Younger* abstention doctrine is an exception to that rule, however, and it "requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings." *Malhan v. Sec'y U.S. Dept. of State*, 938 F.3d 453, 461 (3d. Cir. 2019); *see also Sprint*, 571 U.S. at 77-78. The doctrine is rooted in principles of comity (i.e., a proper respect for state functions) and federalism. *Sprint*, 571 U.S. at 77; *Younger v. Harris*, 401 U.S. 37, 44 (1971).

*Younger* abstention applies to only "three exceptional categories" of parallel state actions: (1) criminal prosecutions; (2) certain civil enforcement proceedings; and (3) pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions. *Sprint*, 57 U.S. at 78-79; *Harmon v. Dep't of Fin.*, 811 F. App'x 156, 157 (3d Cir. 2020). If a court determines that a state proceeding fits into one of those

---

that the Amended Complaint fails to state a plausible claim for relief)). Indeed, strictly speaking, a *Younger* abstention argument is not analyzed under either Rule 12(b)(1) or Rule 12(b)(6). *Harmon v. Dept. of Fin.*, Civil Action No. 18-1021-RGA, 2019 WL 3934919, at *2 (D. Del. Aug. 20, 2019), *vacated on other grounds*, 811 F. App'x 156 (3d Cir. 2020); *Richardson v. New Jersey*, Civ. No. 16-135 (KM), 2016 WL 5858983, at *4 n.4 (D.N.J. Oct. 5, 2016); *see also Tobia v. Lakewood Bd. of Educ.*, CIVIL ACTION NO. 16-4850 (MLC), 2017 WL 1206010, at *3 (D.N.J. Mar. 31, 2017) ("[C]ourts have allowed *Younger* abstention challenges to be raised in both Rule 12(b)(6) or Rule 12(b)(1) motions[.]") (first alteration in original, internal quotation marks and citation omitted); *Nat'l Collegiate Athletic Ass'n v. Corbett*, 25 F. Supp. 3d 557, 562-63 (M.D. Pa. 2014) (noting the lack of consensus with respect to whether motions to dismiss on the basis of abstention should be raised under Rule 12(b)(1), Rule 12(b)(6) or pursuant to some other standard). That said, the United States Court of Appeals for the Third Circuit has noted that "[d]ismissal on abstention grounds without retention of jurisdiction is in the nature of a dismissal under [Rule] 12(b)(6)[,]" in that matters outside the pleadings are not considered. *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1206 n.18 (3d Cir. 1992), *abrogation on other grounds recognized by PDX N., Inc. v. Comm'r N.J. Dept. of Labor & Workforce Dev.*, 978 F.3d 871, 881 n.11 (3d Cir. 2020); *Harmon*, 2019 WL 3934919, at *2. The Court may, however, take judicial notice of court documents in resolving such a motion. *Harmon*, 2019 WL 3934919, at *2; *Tobia*, 2017 WL 1206010, at *3 n.2.

categories, three additional showings (the "*Middlesex* factors") are then required for *Younger* abstention to apply. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Silver v. Ct. of Common Pleas of Allegheny Cnty.*, 802 F. App'x 55, 58-59 (3d Cir. 2020). To that end, abstention is appropriate only when: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the proceedings afford an adequate opportunity to raise the federal claims. *Middlesex*, 457 U.S. at 432; *Cresci v. BCB Cmty. Bank*, 728 F. App'x 145, 148 (3d Cir. 2018). Even if the *Middlesex* factors are established, however, *Younger* abstention is not appropriate if the plaintiff can establish that: (1) the state proceedings are being undertaken in bad faith or for purposes of harassment; or (2) some other extraordinary circumstance exists that would make abstention inappropriate. *Middlesex*, 457 U.S. at 435; *Cresci*, 728 F. App'x at 148.

### B.     Analysis

The Court begins with the threshold issue in a *Younger* abstention analysis: whether the parallel state action falls into one of the "exceptional" categories referenced above. Here, Plaintiff suggests that the disciplinary proceedings do not fall into one of these categories because "no criminal or civil proceeding is at issue." (D.I. 21 at 10 & n.4) That argument, however, is easily dismissed. In *Middlesex*, the Supreme Court of the United States expressly extended the doctrine to attorney disciplinary proceedings. *Middlesex*, 457 U.S. at 432-34; *see also Sprint*, 571 U.S. at 79-80 (explaining that such proceedings constitute civil enforcement proceedings). Accordingly, the Court now turns to the disputed *Middlesex* factors (i.e., the first

and third *Middlesex* factors),[3] as well as Plaintiff's allegations of bad faith/extraordinary circumstances.

  The first *Middlesex* factor asks whether there are ongoing state proceedings that are judicial in nature. *Middlesex*, 457 U.S. at 433. Plaintiff makes two arguments relevant to this factor.

  Plaintiff first appears to suggest (in the "Statement of Facts" section of his answering brief) that the disciplinary proceedings constitute "non-judicial activity" because the Delaware Supreme Court acts in an administrative and regulatory (not judicial) capacity when it oversees the state's attorney disciplinary system. (D.I. 21 at 4) Administrative proceedings may be "judicial in nature" where they bear some "traditional indicia of a judicial action[,]" such as where they are initiated by a complaint, are adjudicative in nature, are governed by court rules or rules of procedure, employ legal burdens of proof and allow for the availability of judicial review. *Kendall v. Russell*, 572 F.3d 126, 131 (3d Cir. 2009). Delaware attorney disciplinary proceedings fit this bill. That is, they can be initiated by a complaint, they are adjudicatory

---

[3]   Plaintiff's answering brief does not appear to dispute the applicability of the second *Middlesex* factor here, (*see* D.I. 21 at 9-13), which considers whether the state proceedings implicate important state interests, *Middlesex*, 457 U.S. at 432. Indeed, the Court easily finds that Delaware's attorney disciplinary proceedings implicate important state interests. (D.I. 18 at 7) In that regard, the *Middlesex* Court reasoned that the state "has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Middlesex*, 457 U.S. at 434; *see also* (D.I. 12 at 2 (concluding the same)). The control that states exercise over the professional conduct of attorneys protects the public, ensures the purification of the bar, and prevents reoccurrences. *Middlesex*, 457 U.S. at 434. In *Middlesex*, the Court further noted that the fact that an agency of the Supreme Court of New Jersey was the named defendant and was also the body that initiated the proceedings against the attorney further demonstrated the state's interest in those proceedings. *Id*. at 434-35. Here, Delaware's interest in the professional conduct of members of its Bar is clearly implicated. (D.I. 18 at 7) And in this case, Plaintiff named as Defendants the Chief Justice and the Justices of the Delaware Supreme Court, as well as the Chief Disciplinary Counsel and Disciplinary Counsel of the ODC (i.e., the entity that is pursuing attorney discipline proceedings against him). This further underscores the state's interest in the disciplinary proceedings. (*Id.*)

proceedings, they are governed by extensive rules of procedure, they employ legal burdens of proof, and their outcomes are subject to review by the Delaware Supreme Court.  And more generally, the Supreme Court, the Third Circuit and district courts in that Circuit have all held that attorney disciplinary proceedings like these are "judicial in nature."  *Middlesex*, 457 U.S. at 432-34 (concluding that New Jersey state bar disciplinary proceedings were judicial in nature, where they were initiated by filing a complaint with an ethics and grievance committee and were within the appellate jurisdiction of the New Jersey Supreme Court); *Cresci*, 728 F. App'x at 148-49 ("[O]ngoing attorney disciplinary proceedings . . . satisfy all three prongs of the *Younger* analysis."); *Gielata v. Rocanelli*, C.A. No. 05-567 (GMS), 2006 WL 8459856, at *3 (D. Del. May 19, 2006) ("Here, as in *Middlesex*, the [Delaware ODC] disciplinary proceedings satisfy the first two prongs of the *Younger* inquiry."); (D.I. 12 at 2 (the District Court noting that "[i]t appears to me that the investigation of ethics complaints by Disciplinary counsel is 'judicial in nature'")).  Plaintiff's first argument is thus not persuasive.

Next, Plaintiff argues (without much elaboration) that *Younger* abstention does not apply because here "no prosecution was pending when this case was filed."  (D.I. 21 at 9)  In support, Plaintiff cites to *Younger*'s statement expressing "no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun."  *Younger*, 401 U.S. at 41 (cited in D.I. 21 at 9).

As Defendants retort, however, the disciplinary proceedings at issue were underway when the instant action was filed.  (D.I. 22 at 2-3)  An inquiry was opened in 2015 pursuant to a complaint, (D.I. 16 at ¶¶ 21, 23), investigatory efforts have been active since then (with proceedings at times having been stayed or postponed at Plaintiff's request) and the 2020 Petition was filed with and approved by the PRC, (*id*. at ¶ 67).  The proceeding remained

pending at the time of filing of this Motion.  (D.I. 21 at 1 (Plaintiff's answering brief noting that "Plaintiff . . . seeks Injunctive and Declaratory Relief regarding prosecution of a *pending* lawyer discipline matter") (emphasis added))  Indeed, courts have found that disciplinary investigations such as the one at issue constitute pending proceedings for *Younger* abstention purposes.  *See Luster v. Florida Bar*, Case No. 3:18-cv-1441-J-32JBT, 2019 WL 3219662, at *3 (M.D. Fla. July 17, 2019) (explaining that for purposes of the first *Middlesex* factor, attorney disciplinary proceedings "begin when the [Bar] opens an inquiry"); *Parker v. Judicial Inquiry Comm'n*, 212 F. Supp. 3d 1171, 1182 (M.D. Ala. 2016) (finding that an investigation by a state Judicial Inquiry Commission was an ongoing proceeding, and concluding that "even if the [disciplinary] proceeding is administrative, *Younger* likely applies"); *Mason v. Florida Bar*, No. 6:05-CV-627-28JGG, 2005 WL 3747383, at *4 (M.D. Fla. Dec. 16, 2005) (finding that, for the purposes of *Younger* abstention, state Bar proceedings begin when an inquiry is opened).

The Court thus finds the disciplinary proceeding to be an ongoing judicial proceeding that satisfies the first *Middlesex* factor.

As to the third *Middlesex* factor, where a plaintiff will have an "adequate opportunity" to raise his federal arguments at the state level, the federal court should abstain from interfering with the pending state judicial proceeding.  *See Middlesex*, 457 U.S. at 435-36 (internal quotation marks and citation omitted); *see also id.* at 431 ("Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights.") (emphasis in original).  The Third Circuit has explained that the operative inquiry for this factor is "whether state law *clearly bars* the interposition of the [] claims." *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 184 (3d Cir. 2014) (internal quotation marks and citation omitted, emphasis in original).  And it is the federal plaintiff who bears the burden

of demonstrating that state procedural law bars presentation of his claims. *Lazaridis v. Wehmer*, 591 F.3d 666, 670-71 (3d Cir. 2010).

Plaintiff does not meet this burden. Although he asserts that "[t]he [disciplinary investigation] [s]ystem does not allow [Plaintiff] to raise his Federal RICO claims or all of the Constitutional claims[,]" Plaintiff cites no facts and provides no reasoning to support that conclusion. (D.I. 21 at 11) In contrast, Defendants cite to four cases where the Delaware Supreme Court considered constitutional arguments raised during disciplinary proceedings. (D.I. 18 at 8 (citing *In re Tennenbaum*, 918 A.2d 1109 (Del. 2007) (due process); *In re Shearin*, 765 A.2d 930 (Del. 2000) (First Amendment); *In re Kennedy*, 472 A.2d 1317 (Del. 1984) (due process and constitutional vagueness); *In re Bailey*, 821 A.2d 851 (Del. 2003) (due process)); *see also* D.I. 12 at 2-3 & n.3 (District Court noting that "it appears that Plaintiff has the opportunity to raise his constitutional challenges in the disciplinary proceedings")) And with regard to Plaintiff's federal RICO claim, in *Cresci v. BCB Cmty. Bank*, 728 F. App'x 145 (2018), the Third Circuit affirmed a district court's decision to abstain under *Younger* in a case where the plaintiff, who was subject to a state attorney disciplinary proceeding, brought numerous claims in federal court—including various constitutional claims and a federal civil RICO claim. 728 F. App'x at 147-49. The Third Circuit explained that the plaintiff had not attempted to raise his claims in the state disciplinary proceeding, and it ruled that in such a circumstance, a "'federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" *Id*. (quoting *Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 15 (1987)). Here, Plaintiff has not provided that "unambiguous authority to the contrary." *Id.* Thus, on this

record, the Court cannot conclude that the Delaware attorney disciplinary proceedings will not provide an adequate opportunity for Plaintiff to raise the substance of his federal claims.[4]

Finally, as to Plaintiff's "allegations of bad faith and harassment which [purportedly] establish that 'exceptional circumstances' exist[,]" (D.I. 21 at 13), the Court is not persuaded that such exceptional circumstances *do*, *in fact*, exist. "[S]o long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex*, 457 U.S. at 435. Plaintiff relies on *Feingold v. Off. of Disciplinary Counsel*, 487 F. App'x 743 (3d. Cir. 2012), for the proposition that "[t]he Third Circuit has held that 'extraordinary circumstances' include allegations that a disciplinary action was frivolous, retaliatory, undertaken without a reasonable expectation of success, motivated by illegitimate considerations, or part of an unjustified and oppressive use of multiple prosecutions." (D.I. 21 at 13 (certain internal quotation marks and citation omitted)) However, in *Feingold* the Third Circuit actually affirmed the lower court's application of *Younger* to abstain from hearing the plaintiff's case against the Pennsylvania Office of Disciplinary Counsel, finding that the plaintiff had provided "no evidence" that the disciplinary action in question amounted to a frivolous, retaliatory or illegitimate exercise of power. *Feingold*, 487 F. App'x at 746 ("Though Feingold claims that the state proceedings were solely to harass him, thus barring the application of *Younger* abstention, he fails to provide a basis for this allegation. . . . [W]e affirm the District Court's dismissal of Feingold's complaint.").

---

[4]     Again, if there were some aspects or elements of his claims that Plaintiff believes cannot be considered by the Delaware Supreme Court as part of his disciplinary proceeding, then the burden was on Plaintiff to explain in some detail what those aspects or elements are, and why he would be prevented from pressing them in substance before the Supreme Court. Plaintiff did not do so in his briefing.

Here, the record is insufficient to establish "bad faith," "harassment" or "extraordinary circumstances." *Middlesex*, 457 U.S. at 435.  In his Amended Complaint, Plaintiff alleges that the five charges against him are "factually and/or legally spurious" and characterizes this as "evidence of the discriminatory nature of the [s]ystem."  (D.I. 16 at ¶ 78; *see also id.* at ¶¶ 66-77 (Plaintiff discussing each of the five charges against him))  However, Plaintiff does not provide sufficient facts to support these broad assertions.  For example, Plaintiff alleges that the first charge against him is a "dishonest, deceitful representation of fact."  (*Id.* at ¶ 70)  Plaintiff also alleges the third charge against him is "knowingly false and fallacious."  (*Id.* at ¶ 72)  But stripped of conclusory phraseology like that, the Amended Complaint does not demonstrate dishonesty or discrimination, known or otherwise.  As Defendants note, "here, a referral was made about [Plaintiff] by a presiding Vice Chancellor, alleging actions observed by that judicial officer in his own courtroom, and that referral was investigated by the ODC[,] who in turn prepared a petition for discipline that was then reviewed by the PRC and approved."  (D.I. 22 at 6)  And as described in the non-conclusory portions of the Amended Complaint, the issues at play in the disciplinary proceeding appear simply to be factual and legal disputes (albeit hotly contested ones) about whether certain actions occurred or whether certain legal rules are applicable.  (D.I. 16 at ¶¶ 66-77)

In deciding the TRO Motion, the District Court previously ruled that "Plaintiff's arguments do not persuade [the Court] that there is any reasonable probability that [Plaintiff's] lawsuit's allegations will make it inappropriate for abstention."  (D.I. 12 at 3)  The Court comes to the same conclusion here, as it cannot conclude on this record that the disciplinary proceeding at issue was brought "without hope of success[.]"  *Getson v. New Jersey*, 352 F. App'x 749, 753 (3d Cir. 2009)) (internal quotation marks and citations omitted).  Therefore, Plaintiff has not met

his burden to show that the "bad faith," "harassment" or "extraordinary circumstances" exceptions to *Younger* are at play.  *Middlesex*, 457 U.S. at 435; *see, e.g.*, *Koresko v. Off. of Disciplinary Couns. of the Disciplinary Bd. of the Sup. Ct. of Pa.*, Civil Action No. 14-1154, 2015 WL 1312269, at *4 (E.D. Pa. Mar. 24, 2015) (concluding that the plaintiff failed to invoke the bad faith exception to *Younger* where he "has not pointed the Court to any evidence of harassment outside of the conclusory statements he made in his Complaint and [in a TRO proceeding]").

For all of the reasons set out above, the Court agrees with Defendants that the *Younger* abstention doctrine applies to this case.

## III.     CONCLUSION

The Court thus recommends that the District Court GRANT Defendants' Motion.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  January 31, 2021

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE